LOLLEY, J.
hDerrick D. Jones appeals his convictions and sentences by the 42nd Judicial District Court, DeSoto Parish, State of Louisiana. Following a consolidated bench trial, Jones was found guilty of: one *507 misdemeanor, false imprisonment, in violation of La. R.S. 14:46; and, one felony, aggravated second degree battery, a violation of La. R.S. 14:34.7. He was sentenced to six months in jail for false imprisonment and to three years’ imprisonment at hard labor for the aggravated second degree battery, the sentences to run concurrently. Jones now appeals these convictions and sentences.
Facts
On January 14, 2012, law enforcement officers were summoned to the home of Jones and his fiancée, Rhonda Wilson. According to police, she was covered with blood and severely injured when they arrived. At the time, Rhonda reported that she and Jones had argued and fought, and she needed medical attention. Jones had left the house by the time police responded to Rhonda’s call. At the hospital, where she repeated her accusations against Jones, Rhonda received stitches and staples for the injuries to her head, neck, and shoulder. Jones was arrested the next day and charged by separate bills of information with false imprisonment, aggravated second degree battery, and domestic abuse battery. On motion of the defendant, the charges were consolidated for bench trial.
The trial began with testimony from Rhonda.[1] She described that she was living with Jones and her two children in a house in Mansfield, Louisiana. When the prosecution asked her about the incident resulting in |gthe 911 phone call, Rhonda answered there was no fight between the two, just a disagreement. At this point the prosecution requested and was granted permission, over a defense objection, to treat Rhonda as a hostile/uncooperative witness under La. C.E. art. 611.
Rhonda testified that after she was injured, she woke her daughter and asked her to call 911, because she needed a doctor to check the bleeding from her head and arm. On the witness stand, she denied that the injuries were caused by Jones, despite what she had initially told police. Rhonda described that at the hospital she was treated for the injuries to her back and neck and she received stitches in her shoulder and staples in the back of her head.
The state admitted into evidence its exhibits — photos showing the injuries to Rhonda’s head, neck, and shoulders. Even viewing those, Rhonda still denied that Jones hit her with anything and insisted that the injuries were caused when she and Jones fell onto a glass table by the front door. Rhonda said she did not tell the officers this on the night of the incident, because she was lying to incriminate Jones. She explained how she tried to stop Jones from leaving and during the struggle they fell and she was injured. Rhonda testified that she broke the broom handle into two pieces and threw one at Jones and when he threw it back at her, it hit her arm, causing an open wound. On the stand, Rhonda maintained that despite her statements to police that night, there was “no beating” and that both kids were asleep during the incident. She agreed, after viewing another exhibit, a picture of the table, that there was no blood on the table where she claimed she received the majority of the wounds that caused her heavy bleeding.
Nathaniel Anderson was the Mansfield Police Department patrol | ^officer who responded to the 911 call from Rhonda’s home. At trial, he testified that he found Rhonda in the doorway wearing a bloody gown, with blood all over her and blood coming from her head, neck, and arms. *508 According to Anderson, Jones was not there and the children were on the couch. Anderson said Rhonda was “pretty upset and hysterical,” and that she said she feared for the safety of herself and her children. Rhonda told the officer that Jones caused her injuries using a metal broomstick and a wooden piece with a nail in it, both of which were found at the scene. Anderson identified the state’s exhibits, a bloodied bent metal broomstick and a piece of wood with a nail in it. Anderson testified that Rhonda told him that Jones tried to choke her with the broomstick and then hit her in the face and head with the wooden stick, which she said came from the back door. According to Anderson, at the time, Rhonda also told him that Jones would not allow her in the other rooms in the house and would not allow her access to the phone to call for help. Anderson reviewed and verified the pictures he took that night of Rhonda’s injuries: the back of Rhonda’s head with staples; the gash on Rhonda’s back and neck; the injuries to Rhonda’s shoulder; the table by the door with the broken glass; and Rhonda’s shoulder after it was stitched up.
Jason Dean Ambrose, with the Mansfield Police Department, testified that he spoke with Rhonda at the hospital and she was shaken up, scared, and kept asking the officers to secure her house. He noted that Rhonda kept repeating that Jones was going to kill her, he held her against her will, and he struck her several times with the broom handle and other objects.
After the state rested, Jones took the stand to testify in his defense. |4He stated that he and Rhonda struggled that night and knocked furniture over while the children were asleep. He denied that he kept Rhonda from leaving and said that she struggled to stop him from leaving the house. Jones said he was simply trying to defend himself from Rhonda because she was “real mad” and that he needed to calm her down. Jones was questioned by the prosecution about a letter he had written on February 14, 2013, to Richard Johnson, the DeSoto Parish District Attorney. In the letter, Jones stated that the event was an “isolated accident” that occurred when he failed to take antibiotics for an infection and had been drinking heavily. He wrote that he did not know or remember what he was doing that night. Jones testified that some of the things he wrote in the letter were stated only in an attempt to get out of jail.
At the conclusion of the trial, the trial court held that the state had proved, beyond a reasonable doubt, all the elements of false imprisonment and aggravated second degree battery. The trial court ruled that Jones was guilty as charged on both counts and ordered a presentence investigation report (the “PSI”).
After consideration of the PSI and the conclusion of the sentencing hearing, Jones was sentenced to three years’ imprisonment at hard labor, with credit for time served for aggravated second degree battery. For false imprisonment, Jones was sentenced to six months in parish jail, with credit for time served, to run concurrently to the other sentence. After a motion for reconsideration of his sentence was denied, this appeal ensued.
Discussion

Sufficiency of the Evidence

|fiJones’s first two assignments of error address the sufficiency of the evidence for his convictions of false imprisonment and aggravated second degree battery. On both charges, he claims that the evidence presented at trial was insufficient to support the convictions.
The proper test for determining a claim of insufficiency of evidence in a crim *509 inal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, 2001-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.01/09/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. State v. Pigford, 2005-0477 (La.02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.01/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/06/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony IfiOf a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913, cert. denied, _ U.S. _, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010).
Direct evidence provides proof of the existence of a fact, for example, a witness’s testimony that he saw or heard something. State v. Lilly, 468 So.2d 1154 (La.1985). Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. Id. The trier of fact is charged with weighing the credibility of this evidence and on review, the same standard as in Jackson v. Virginia, supra, is applied, giving great deference to the factfinder’s conclusions. Id.
When the state relies on circumstantial evidence to establish the existence of an essential element of a crime, the court must assume every fact that the evidence tends to prove and the circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; State v. Lilly, supra.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.09/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.03/28/03), 840 So.2d 566, 2002-2997 (La.06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). The trier of fact is charged to make a credibility 17determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 1999-0023 (La.01/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
Extrinsic evidence, such as prior inconsistent statements and evidence contradicting the witness’s testimony, may be admitted when offered solely to attack the witness’s credibility, unless the trial court finds that the value of such credibility evidence is outweighed by the risk of undue consumption of time, confusion of the issues, or unfair prejudice. La. C.E. 607(D)(2); State v. Givens, 45,246 (La. *510 App.2d Cir.06/09/10), 41 So.3d 589. However, although prior inconsistent statements may be used to impeach the witness on the issue of credibility, they generally may not be used as substantive evidence of the defendant’s guilt. State v. Cousin, 96-2973 (La.04/14/98), 710 So.2d 1065; State v. Givens, 45,246 (La.App.2nd Cir.06/09/10), 41 So.3d 589; State v. Robert, 42,036 (La.App.2nd Cir.05/09/07), 956 So.2d 750; State v. Jones, 41,299 (La.App.2d Cir.11/09/06), 942 So.2d 1215, writ granted in part and denied in part, 2006-3025 (La.08/31/07), 963 So.2d 381 and 2006-2905 (La.08/31/07), 963 So.2d 382. In fact, prior inconsistent statements, even when unobjected to, simply do not constitute substantive evidence of guilt. State v. Allien, 366 So.2d 1308 (La.l978)(emphasis added).
Concerning prior inconsistent statements specifically, La. C.E. art. 801(D)(1)(a) was revised in 2004 and states:
|SD. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The de-clarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
(a) In a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness’ attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement [.] (Emphasis added).
Considering the 2004 change to art. 801, this court noted in State v. Rankin, 42,412 (La.App.2nd Cir.09/19/07), 965 So.2d 946, 951, “Before these prior [inconsistent] statements can be accepted as nonhearsay, and therefore probative, additional evidence must also corroborate the facts sought to be proved by these prior inconsistent statements.” (Emphasis added).

Aggravated Second Degree Battery

Aggravated second degree battery is defined in La. R.S. 14:34.7 as a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury. “Serious bodily injury” means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death. La. R.S. 14:34.7(B)(3).
Here, the trial court, as factfinder, was charged with ascertaining the facts from various sources. Presented at trial was the conflicting testimony from the law enforcement officers and Rhonda — they relating her accusations made that night, and she recanting those accusations on the stand. The trial court also considered Jones’s testimony that supported Rhonda’s trial |9statements. However, and importantly, in addition to the conflicting statements, the trial court also had before it other substantive evidence in the form of testimony by the officers describing the scene that night, along with photographs of Rhonda’s condition taken contemporaneously to the incident.
Although prior inconsistent statements, taken alone, cannot be used as substantive evidence to convict, in this case there was other sufficient circumstantial evidence that Jones committed aggravated battery on Rhonda that night, without reliance on her prior inconsistent statements: the blood found all over the house and Rhonda’s clothes; the bent metal broom handle; the stick with the nail in it; Rhonda’s obvious physical injuries with blood seeping from them; the undisputed fact that *511 Jones was at the home and saw Rhonda injured, yet left the scene before police arrived; and, the description by responding officers of Rhonda’s hysterical nature and fear for the safety of herself and her children. All of this additional evidence corroborates the facts, supporting the conclusion that Jones committed a battery on Rhonda with multiple dangerous weapons, without the necessity of relying on the prior inconsistent statements made by Rhonda. Thus, the evidence for his conviction on this offense was sufficient, and this assignment of error is without merit.

False Imprisonment

False imprisonment is the intentional confinement or detention of another, without his consent and without proper legal authority. La. R.S. 14:46. On the offense of false imprisonment, Jones argues that there is no evidence that he tried to stop Rhonda from leaving the house. He argues that the prosecution failed to prove all the elements for false imprisonment, and|10we agree.
The only evidence that Jones intentionally confined or detained Rhonda is her initial statement(s) to officers that Jones had refused to let her leave the house, which accusation she recanted at trial. Jones also denied this to be true. There was no other substantive evidence introduced at trial tending to show that Jones committed the crime of false imprisonment. For instance, the state did not produce any evidence of the amount of time over which the attack took place, which might have indicated that Rhonda was detained, or evidence that she was restrained or locked in the house, which would show that she was confined. The due process clause of the fourteenth amendment to the United States Constitution requires that the prosecution prove beyond a reasonable doubt every essential element of the crime of which the accused is convicted. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Here, the only evidence offered toward conviction on this offense was Rhonda’s prior inconsistent statements, and these statements simply do not constitute substantive evidence that Jones committed the offense. When police arrived at the house, Rhonda was bleeding and hysterical-reasonably corroborating the fact that Jones had committed a battery despite her subsequent denial at trial. However, based on the record before us, we cannot say that the evidence, which was more than sufficient to show that Jones committed aggravated second degree battery, was sufficient to prove beyond a reasonable doubt that he was guilty of false imprisonment. The elements of the crime simply were not proved. Therefore, without any other corroborating facts, Jones’s conviction and sentence for false imprisonment must be reversed. See State v. Allien, supra.
| ^Hostile Witness
In her third assignment of error, Jones argues that the trial court erred in allowing the state to treat Rhonda as a hostile witness when she had not been hostile and had answered the prosecutor’s question. The state argues that La. C.E. art. 611 gives the trial court discretion to allow leading questions and that this was proper given Rhonda’s change from her prior statements and her attempt to impede the prosecution by downplaying the attack.
Louisiana C.E. art. 611 states, in pertinent part, that:
A. Control by court. Except as provided by this Article and Code of Criminal Procedure Article 773, the parties to a proceeding have the primary responsibility of presenting the evidence and examining the witnesses. The court, however, shall exercise reasonable control over the mode and order of interro *512 gating witnesses and presenting evidence so as to:
(1) Make the interrogation and presentation effective for the ascertainment of the truth;
(2) Avoid needless consumption of time; and
(3) Protect witnesses from harassment or undue embarrassment.
C. Leading questions. Generally, leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony and in examining an expert witness on his opinions and inferences. However, when a party calls a hostile witness, a witness who is unable or unwilling to respond to proper questioning, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions. Generally, leading questions should be permitted on cross-examination. However, the court ordinarily shall prohibit counsel for a party from using leading questions when that party or a person identified with him is examined by his counsel, even when the party or a person identified with him has been called as a witness by another party and tendered for cross-examination.
| i2The use of leading questions is largely within the discretion of the trial court, and only clear abuse of that discretion which prejudices the defendant’s rights will justify reversal of a conviction. State v. Grady, 47,622 (La.App.2d Cir.01/16/13), 108 So.3d 845, writ denied, 2013-0294 (La.10/04/13), 122 So.3d 551.
The statute clearly allows the trial court to determine when leading questions may be used. Rhonda’s testimony at trial contradicted her statements to police that night, as well as the evidence and other testimony at trial. Her testimony recanting her prior statements and the evidence, together with her insistence that there was just a disagreement and a fall that caused such severe injuries, demonstrated that she would not be cooperative at trial. Furthermore, Jones fails to show that his rights were prejudiced as a result of the trial court’s ruling. The trial court’s decision to treat Rhonda as a hostile witness was not an abuse of its discretion; accordingly, this claim is without merit.

Sentencing

In his final assignment of error, Jones maintains that the trial court erred, as a matter of law, in rendering an excessive sentence on his aggravated second degree battery conviction. He argues that his actions here, and the resulting injuries, were nowhere as severe as the injuries sustained in other convictions for second degree aggravated battery, making his three-year sentence excessive. We disagree.
The trial court has wide discretion in imposing a sentence within minimum and maximum limits allowed by the statute; therefore, a sentence will not be set aside as excessive unless the defendant shows the trial court |isabused its discretion. State v. Young, 46,575 (La.App.2d Cir.09/21/11), 73 So.3d 473, writ denied, 2011-2304 (La.03/09/12), 84 So.3d 550. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Zeigler, 42,661 (La.App.2d Cir.10/24/07), 968 So.2d 875. The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Esque, 46,515 (La.App.2d Cir.09/21/11), 73 So.3d *513 1021, writ denied, 2011-2347 (La.03/09/12), 84 So.3d 551.
An excessive sentence is reviewed by examining whether the trial court adequately considered the guidelines established in La.C.Cr.P. art. 894.1 and whether the sentence is constitutionally excessive. State v. Gardner, 46,688 (La.App.2d Cir.11/02/11), 77 So.3d 1052. Where the defendant’s motion to reconsider sentence alleges mere excessiveness of sentence, on appeal the reviewing court is limited to considering whether the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Boyd, 46,321 (La.App.2d Cir.09/21/11), 72 So.3d 952.
A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance; the trial court need only articulate a factual basis for the sentence. State v. Cunningham, 46,664 (La.App.2d Cir.11/02/11), 77 So.3d 477. The defendant’s personal history and criminal record, as well as the seriousness of the offense, are some of the elements considered, but the trial court is not required to weigh any specific matters over other matters. State v. Moton, 46,607 (La.App.2d Cir.09/21/11), 73 So.3d 503, writ denied, 2011-2288 (La.03/30/12), 85 So.3d 113. All convictions and all prior criminal activity may be considered as well as other evidence normally excluded from the trial. State v. Platt, 43,708 (La.App.2d Cir.12/03/08), 998 So.2d 864, writ denied, 2009-0265 (La.11/06/09), 21 So.3d 305. Maximum sentences are generally reserved for the worst offenses and offenders. State v. Taylor, 41,898 (La.App.2d Cir.04/04/07), 954 So.2d 804.
Under constitutional review, a sentence can be excessive, even when it falls within statutory guidelines, if the punishment is so grossly disproportionate to the severity of the crime that it shocks the sense of justice and serves no purpose other than to inflict pain and suffering. State v. Fatheree, 46,686 (La.App.2d Cir.11/02/11), 77 So.3d 1047.
Louisiana R.S. 14:34.7 provides that whoever commits the crime of aggravated second degree battery faces a maximum prison sentence of 15 years, with or without hard labor; a maximum $10,000 fine; or, both.
The trial court found Jones guilty as charged for committing aggravated second degree battery. The three-year hard labor sentence imposed on Jones was well within the statutory guideline under La. R.S. 14:34.7. Despite Rhonda’s attempt at trial to suggest this incident was just a disagreement and that she fell, her physical and mental condition that night tell a different story-one that aligns with injuries seen in the photographs. Given the dangerous weapons used and the severity of Rhonda’s injuries to her head, neck, and shoulder, this three-year hard labor sentence is not grossly disproportionate to the severity of the crime and does not shock the sense of justice. Nor does this sentence suggest it is a needless infliction of | ispain and suffering on Jones, whose PSI report shows he has had prior problems with violence and drugs. Although Jones was shown leniency in the sentences for his prior convictions, he has not demonstrated learning from these mistakes. Moreover, his violence is escalating. Jones fails to show that his sentence was constitutionally excessive; therefore, this claim is without merit.
Conclusion
For the foregoing reasons, the conviction and sentence of Derrick D. Jones on the charge of aggravated second degree battery in violation of La. R.S. 14:34.7 are affirmed. The conviction and sentence on *514 the charge of false imprisonment under La. R.S. 14:46 are reversed.
AFFIRMED IN PART; REVERSED IN PART.
GARRETT, J., Concurs in Part and Dissents in Part.

. Prior to the trial, the defendant and Rhonda were married.